N. J. GEORGE AND WIFE, MARY B. GEORGE; LORAINE BURNS; JOHN A. MITCHENER III; JAMES G. BLOUNT AND BYRON P. KEHAYES v. TOWN OF EDENTON; ROY L. HARRELL, MAYOR AND MEMBER OF THE TOWN COUNCIL OF THE TOWN OF EDENTON; AND JAMES C. DAIL, JESSIE L. HARRELL, W. H. HOLLOWELL, JR., HARRY A. SPRUILL, JR., LEO F. KATKAVECK, ERROL FLYNN, JAMES DARNELL AND J. H. CONGER, JR., MEMBERS OF THE TOWN COUNCIL OF THE TOWN OF EDENTON; W. B. GARDNER, ADMINISTRATOR; AND W. G. MATTHEWS, BUILDING INSPECTOR

No. 73

(Filed 17 April 1978)

1. Municipal Corporations § 30.20— zoning change after denial of such change—time limit—proposal by town council—adoption of new zoning ordinance

Provision of a town zoning ordinance prohibiting the town council, when it has denied an application for a zoning change, from accepting another application for the same change within six months following such denial precluded the town council from enacting a zoning change within six months after its denial of the owners' application for the same change even though the second proposal was initiated by the town council rather than by the owners and the zoning change was accomplished as part of the adoption of a new zoning ordinance.

2. Municipal Corporations § 30.20— zoning ordinance—certification by planning board—statement in opinion of Court of Appeals not authoritative

The statement in George v. Town of Edenton, 31 NC App 648, 653, that provisions of G.S. 160A-387 requiring certification of a zoning plan by the planning commission apply only to the municipality's initial exercise of zoning power should not be considered authoritative since such a restrictive construction of the statute by the Court of Appeals was not necessary to its decision, and certification by the planning board may also be required for subsequent comprehensive revisions of a zoning ordinance.

ON plaintiff's petition for further review (G.S. 7A-31) of the decision of the Court of Appeals (opinion by *Brock, C.J., Parker* and *Hedrick, JJ.*, concurring, 31 N. C. App. 648, 230 S.E. 2d 695 (1976)), insofar as the decision affirmed summary judgment of *Peel, J.*, for defendants, entered at the 29 March 1976 Civil Session of CHOWAN Superior Court. This case was argued as No. 110, Spring Term 1977.

*Twiford, Trimpi & Thompson, by John G. Trimpi and O. C. Abbott, Attorneys for plaintiffs.*

*White, Hall, Mullen & Brumsey, by Gerald F. White and John H. Hall, Jr., Attorneys for defendants.*

EXUM, Justice.

[1] The principal question before us is whether the Edenton Town Council violated the procedural provisions of the town's zoning ordinance in rezoning a tract of land less than six months after having denied an application for the same change. We hold that it did.

This is a declaratory judgment action by which plaintiffs seek to determine the validity of two actions of the Edenton Town Council which purported to rezone, respectively, two tracts of real property. Both tracts are approximately 10 acres. Tract One (hereinafter North Tract) is located on the north side and Tract Two (hereinafter South Tract) on the south side of N.C. Highway 32 at the proposed intersection of N.C. Highway 32 and U.S. Highway 17 By-pass, outside the town limits of Edenton but within the town's one-mile zoning jurisdiction. On 12 August 1975 the Town Council sought to rezone the North Tract from R-20 (Residential — Agricultural) to CH (Highway — Commercial). On 14 October 1975 the Council sought to rezone the South Tract from R-20 to CS (Shopping Center).

Plaintiffs, as residents of Chowan County within the jurisdiction of the zoning powers of defendants, challenge in their complaint the legality of both actions of the Town Council and ask the court to determine their validity. After defendants filed answer, both plaintiffs and defendants moved for summary judgment. Both motions came on for hearing before Judge Elbert S. Peel, presiding in Chowan Superior Court. Judge Peel allowed defend-

George v. Town of Edenton

ants' motion for summary judgment and denied plaintiffs' motion for the same relief. The effect of his ruling was to declare the challenged actions of the Town Council legally valid.

Plaintiffs appealed to the Court of Appeals. That court determined that Council's action on 14 October 1975 purporting to rezone the South Tract was invalid because the required 15 days notice of hearing was not given. It determined, however, that Council's action on 12 August 1975 purporting to rezone the North Tract was a valid exercise of the town's zoning authority. The Court of Appeals, therefore, affirmed the ruling of Judge Peel as to the North Tract but reversed his ruling as to the South Tract.

We allowed plaintiffs' petition for discretionary review in order to consider the correctness of the Court of Appeals' decision with respect to the North Tract. We reverse that decision.

The facts are almost entirely undisputed. All occurred in 1975. On 2 January Rosa Ward conveyed the property in question to Bernard P. Burroughs and Wiley Earnhardt, Jr. On 14 March these owners applied to the Edenton Planning Board and Zoning Commission (hereinafter Planning Board) to rezone the North Tract from R-20 to CH. The Planning Board unanimously recommended this change to the Town Council, but after a public hearing on 13 May the Council denied the application. During the meeting at which this application was denied the Town Administrator presented to the Council for its consideration "an update of the Zoning Ordinance for the Town of Edenton" (hereinafter New Ordinance).[1]

On 26 May the Council and Planning Board met jointly to consider the New Ordinance. Minor changes were recommended to the Council by the Planning Board, but none of the changes recommended encompassed the North Tract. The Council determined to call a public hearing to discuss the New Ordinance "as soon as possible."

---

1. We have been provided only with the texts of the old and new zoning ordinances. While the Official Zoning Map is incorporated into the ordinance through Section 5-1, the Map itself has not been made a part of this record. It is not clear from the record what changes in the Official Zoning Map, if any, were contemplated by the New Ordinance. Our impression is that the New Ordinance was concerned only with various textual changes. It seems reasonably clear from the record that no change in the Zoning Map with reference to the North Tract was contemplated when the New Ordinance was proposed and that this property, under the New Ordinance as proposed, retained its R-20 designation.

On 10 June at a regular meeting of the Council, it set a public hearing for 8 July to consider the New Ordinance. On 12 June the owners applied to the Planning Board to rezone the North Tract from R-20 to CS (Shopping Center). The Planning Board recommended this change to the Council on 30 June.

On 8 July the Council met in regular session to conduct a public hearing for the purpose of considering the New Ordinance. A motion offered at this meeting that the Council rezone the North Tract from R-20 to CH was, after some discussion, withdrawn. The Council decided on motion to hold another public hearing at its next regular meeting on 12 August for the purpose of further considering both the New Ordinance and changing the North Tract from R-20 to CH. The Council also determined to hold a public hearing at its 12 August meeting on the owners' application to rezone the North Tract from R-20 to CS. This decision was made with the understanding that the owners would withdraw this application if the Council determined at its 12 August meeting to rezone the North Tract to CH.

At the 12 August regular meeting the Council adopted the New Ordinance. A majority of the Council also voted to rezone the North Tract from R-20 to CH. Plaintiffs contend this change was made subsequent to the adoption of the New Ordinance. Defendants contend the change was made, as the minutes reflect, "as a part of the adoption of" the New Ordinance.

Both the old and the new Edenton zoning ordinances contain Section 14-8, which prohibits the Council, when it has denied an application for a zoning change, from accepting another application for the same change within six months following such denial. Relying on the minutes of the 12 August Council meeting, the Court of Appeals concluded that the action rezoning the North Tract from R-20 to CH was done as a part of the adoption of the New Ordinance, rather than after its adoption. Therefore, it reasoned, Section 14-8 of the ordinance was not applicable to this change.[2] We disagree.

---

2. Much of the discussion in the Court of Appeals' opinion and much of the briefs and arguments before us were directed toward the questions: (1) Whether this action constituted a direct or collateral attack on the Council's minutes; (2) Whether Judge Peel erred in denying plaintiffs' motion to amend their complaint so as to challenge these minutes; and (3) Whether parol testimony was admissible to show the minutes did not correctly reflect what transpired at the meeting. Our resolution of the case makes it unnecessary to address these interesting questions.

George v. Town of Edenton

Whether the North Tract was rezoned by adopting the change "as part of the New Ordinance," or whether it was rezoned after its adoption, we think the Council violated Section 14-8 of its zoning ordinance governing zoning changes. Both the old zoning ordinance and the New Ordinance adopted on 12 August contain Section Fourteen dealing with "Amendments." In both ordinances Section Fourteen is identical in every respect pertinent here. The following provisions in Section Fourteen govern the action taken by the Council with respect to the North Tract:

"14-1  *Who May Petition*

A petition for a zoning amendment may be initiated by the Town Council, the Planning Board, any department or agency of the Town, or the owner or renter of any property within the zoning jurisdiction of the Town of Edenton.

. . . .

14-5  *Proposed Amendments to be Submitted to Planning Board for Recommendation*

Unless initiated by the Planning Board, the Town Council shall submit all proposed amendments to the zoning ordinance to the Planning Board for review and recommendation. The Planning Board shall have one hundred eighty (180) days within which to submit a report within the above period. If the Planning Board does not submit a recommendation within this time period, it shall be deemed to have approved the proposed amendment.

. . . .

14-8  *Reconsideration*

When the Town Board shall have denied any application for the change of any zoning district, it shall not thereafter accept any other application for the same change of zoning amendment affecting the same property, or any portion thereof, until the expiration of six (6) months from the date of such previous denial."

In general municipal ordinances are to be construed according to the same rules as statutes enacted by the legislature. The basic rule is to ascertain and effectuate the intention of the municipal legislative body. *Cogdell v. Taylor*, 264 N.C. 424, 142 S.E. 2d 36 (1965); *Bryan v. Wilson*, 259 N.C. 107, 130 S.E. 2d 68 (1963); 56 Am. Jur. 2d Municipal Corporations § 398 (1971). We must therefore consider this section of the ordinance as a whole, *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972); *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972); and the provisions *in pari materia* must be construed together, *Comr. of Insurance v. Automobile Rate Office*, 287 N.C. 192, 214 S.E. 2d 98 (1975).

[1] So construing the provisions set out above, and assuming the correctness of defendants' version of the procedure by which the North Tract was rezoned, we hold the Council acted in violation of these provisions. The stipulated facts show that the owners' application to rezone the North Tract to CH was denied on 13 May; on 8 July the Council decided to consider at the 12 August meeting a proposal to rezone the tract to CH; and the change to CH was approved at the meeting on 12 August. It appears that the proposal for this change to CH originated on "motion by Councilman Conger, seconded by Councilman Spruill, unanimously carried that a public hearing be called for the August Council meeting . . . to consider a change in the zoning map on the ten acre tract on the North side of N.C. 32 from R-20 to Highway Commercial." Thus the action taken by the Council on 12 August, whatever its formal character, amounted in substance to a reversal of the 13 May decision not to rezone the North Tract to CH.

Such a reversal violated the procedure required by Section 14-8. This section prohibits the "Town Board," defined in Section 2-1.11 to mean the Edenton Town Council, once it has denied an application for a zoning change, from "accept[ing] any other application for the same change of zoning amendment" within the next six months. In view of the provision of Section 14-1 that an amendment may be initiated by the Council as well as by the property owner, the Council's 8 July decision to consider changing the North Tract to CH constituted, within the meaning of this section, its own petition or application for an amendment. Technically this proposal should have been submitted to the Planning Board under Section 14-5, but such a submission would have

been superfluous because the board had already recommended the change unanimously. Section 14-8, however, remained as a significant procedural requirement which the Council failed to observe. The wording of this section broadly prohibits the acceptance of "any other application for the same change" within the prescribed period. No distinction may validly be drawn between proposed amendments initiated by the property owner and those initiated by the Council or by the Planning Board. Thus Section 14-8, construed in context to effectuate the purpose apparent from its terms, prohibited the Town Council from enacting the zoning change within six months after its denial of the owners' application.

The Court of Appeals erroneously held Section 14-8 inapplicable because it saw the zoning change accomplished as part of the adoption of the New Ordinance rather than as an amendment thereto. On the record before us, this distinction does not render Section 14-8 inapplicable. Such a distinction would allow easy circumvention of the provision whenever an applicant can attach a proposed zoning amendment to some larger revision of the general ordinance. We therefore decline so to eviscerate a requirement the Council has established to regulate its own procedure. *See Refining Co. v. Board of Aldermen,* 284 N.C. 458, 202 S.E. 2d 129 (1974); *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972).

Our research has failed to disclose any North Carolina decision directly on point, and none has been cited to us. Other jurisdictions have generally been unwilling to permit what are perceived as circumventions of zoning provisions that require a waiting period, following denial of a rezoning application, before the change may be reconsidered.

In *Newman v. Smith,* 217 Ga. 465, 123 S.E. 2d 305 (1961), the Georgia Supreme Court considered a DeKalb County "Zoning Resolution" providing that "an owner of property or his authorized agent shall not initiate action for an amendment to the zoning map affecting the same parcel more often than once every twelve (12) months . . . . " The record there showed that an owner's application for rezoning was denied and that his attorney subsequently appeared before the county board seeking reconsideration. The board voted to resubmit an application to the

George v. Town of Edenton

planning commission. Upon receiving an application modified as suggested by the commission, the board proceeded to grant the application less than twelve months after its original denial. Against the owner's contention that the second application was initiated by the board rather than the property owner, the court held that the board's action failed to comply with the twelve month waiting period and was void. 217 Ga. at 468-69, 123 S.E. 2d at 307-08. In *Tyrie v. Baltimore County*, 215 Md. 135, 137 A. 2d 156 (1957), the Maryland Court of Appeals considered a similar Baltimore County ordinance requiring a waiting period of eighteen months between successive applications. The original owners there had applied unsuccessfully for a zoning reclassification and thereafter sold the property to a corporation, which obtained a "special exception" within the prescribed period. The court held that this mode of changing the status of the property, though distinct from the reclassification procedure, was nevertheless within the eighteen month bar of the ordinance and the change was therefore invalid. The court doubted the ordinance "contemplated or intended that if, in a proceeding to change its status, a property was adjudged to be rightly zoned, that a different result could be achieved immediately by a new application in a different form." 215 Md. at 141, 137 A. 2d at 159. *Accord, DeLatour v. Morrison*, 213 La. 292, 34 So. 2d 783 (1948); *compare Stone Mountain Industries v. Wilhite*, 221 Ga. 269, 144 S.E. 2d 357 (1965); *Cosmopolitan Nat'l. Bank v. City of Chicago*, 27 Ill. 2d 578, 190 N.E. 2d 352 (1963); *Arkenberg v. City of Topeka*, 197 Kan. 731, 421 P. 2d 213 (1966); *Stephens v. Montgomery County Council*, 248 Md. 256, 235 A. 2d 701 (1967); *Follmer v. County of Lane*, 5 Or. App. 185, 480 P. 2d 722 (1971); *but see McNutt Oil & Refining Co. v. Brooks*, 244 S.W. 2d 872 (Tex. Civ. App. 1951); *see generally* Annot., 52 A.L.R. 3d 494 (1973).

We note especially the observation of the Maryland Court of Appeals in Stephens, *supra*, that the waiting period required by the ordinance was designed "to prevent an applicant from subjecting the residents of the area to the burden of having to protest and defend against a series of repetitious applications." 248 Md. at 258, 235 A. 2d at 702. Such purpose seems to underlie Section 14-8 of the Edenton zoning ordinance. This purpose would clearly be frustrated if the Edenton Town Council could at the 13 May 1975 public hearing consider and reject the owners' applica-

tion to rezone the North Tract, and then act on its own initiative to make the same change at the public hearing on 12 August, even if such a change was sought to be made as a part of the adoption of a new zoning ordinance.

This Court may not substitute its judgment for the legislative determination of the Council, but we may inquire whether the Council acted in violation of required procedures. *Blades v. City of Raleigh, supra,* 280 N.C. 531, 187 S.E. 2d 35 (1972). Having done so we conclude that, because of its violation of Section 14-8 of its own ordinance, the Council's purported rezoning of the North Tract must be set aside and the change considered, if at all, *de novo. Refining Co. v. Board of Aldermen, supra,* 284 N.C. 458, 202 S.E. 2d 129 (1974).

[2] In view of the foregoing holding, we need not consider the remaining challenges brought by plaintiffs against defendants' rezoning of the North Tract. One portion of the Court of Appeals' opinion, however, deserves comment. Plaintiffs have also argued that defendants in adopting the New Ordinance did not obtain certification from the Planning Board as required by General Statute 160A-387, which at the time in question provided:

"§ 160A-387. *Planning agency; zoning plan; certification to city council.* — In order to exercise the powers conferred by this Part, a city council shall create or designate a planning agency under the provisions of this Article or of a special act of the General Assembly. The planning agency shall prepare a zoning plan, including both the full text of a zoning ordinance and maps showing proposed district boundaries. The planning agency may hold public hearings in the course of preparing the plan. *Upon completion, the planning agency shall certify the plan to the city council. The city council shall not hold its required public hearing or take action until it has received a certified plan from the planning agency.* Following its required public hearing, the city council may refer the plan back to the planning agency for any further recommendations that the agency may wish to make prior to final action by the city council in adopting, modifying and adopting, or rejecting the ordinance. (1923, c. 250, s. 6; C.S., s. 2776(w); 1967, c. 1208, s. 2; 1971, c. 698, s. 1; 1973, c. 426, s. 60.) (Emphasis supplied.)

The Court of Appeals rejected this argument, stating, 31 N.C. App. 653, 230 S.E. 2d 698:

"The procedure in G.S. 160A-387 is, however, a prerequisite only to the municipality's initial exercise of zoning power. Thereafter, the planning agency, which was created at the initial stage, remains present to assist the legislative body in further zoning activity."

The Court of Appeals apparently grounded this construction of the statute on the nature of the planning agency as an advisory rather than a legislative body, citing *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971) and *In re Markham*, 259 N.C. 566, 131 S.E. 2d 239 (1963).

General Statute 160A-387 does not expressly restrict its application to a municipality's initial adoption of a comprehensive zoning ordinance. We think such certification may also be required for subsequent comprehensive revisions of an ordinance such as the New Ordinance enacted by defendants here in August, 1975.[3] The Court of Appeals' restrictive construction of the statute was not necessary to its decision, and considerable authority suggests such construction was error. *See Williams v. City of San Bruno*, 31 Cal. Rptr. 854 (Cal. App. 1963); *Johnson v. Board of County Com'rs.*, 34 Colo. App. 14, 523 P. 2d 159 (1974), *aff'd* 187 Colo. 443, 532 P. 2d 742 (1975); *Hasbrouck Heights Hospital Ass'n v. Borough of Hasbrouck Heights*, 15 N.J. 447, 105 A. 2d 521 (1954); *Milligan v. City of New Brunswick*, 83 N.J. Super. 185, 199 A. 2d 82 (1964); *but see* 1 Anderson American Law of Zoning §§ 4.09, 4.30 (2d ed. 1968), and cases cited. Moreover, while the statutes both in North Carolina and in other states generally track the Standard State Zoning Enabling Act, *reprinted in* 4 Anderson American Law of Zoning § 30.01 (2d ed. 1968), many of these statutes, including General Statute 160A-387, vary the language of the Standard Act so as to obscure their precise meaning on this point. *Compare* Section 6 of the Standard State Zoning Enabling Act; G.S. 160A-387; former G.S. 160-177 as originally enacted, Ch. 250 of the 1923 Session Laws, and as amended in Ch. 1208 of the 1967 Session Laws. The construction

_____

3. Comprehensive revision should probably be distinguished from acts by which ordinances are "amended, supplemented or changed." The latter are clearly within the purview of General Statute 160A-384, which simply authorizes the local governing board to provide a system for making these kinds of changes.

of these enabling statutes might also involve a distinction between a "zoning commission" and a "planning commission"[4] under the various statutory schemes. *See* 1 Rathkopf The Law of Zoning and Planning § 10.02, p. 10-9 (4th ed. 1975); *Talbert v. Planning Commission*, 230 So. 2d 920 (La. App. 1970). Article 19 of Chapter 160A of the General Statutes is especially unclear as to the respective roles of these two entities.

Apart from General Statute 160A-387, submission to the Edenton Planning Board was clearly required by Section 14-5, *supra*, of both the old and new Edenton zoning ordinances. But as both the New Ordinance and the North Tract zoning change in fact received approval of the Planning Board, Section 14-5 was substantially complied with and the proper construction of General Statute 160A-387 is academic.

While we decline now to resolve this question of statutory construction, the above-quoted statement of the Court of Appeals should not be considered authoritative.

The Court of Appeals' decision affirming the judgment of the Chowan County Superior Court as to the North Tract is

Reversed.

---

4. Section 2-1.10 of both the old and new Edenton ordinances provides: "The words 'Planning Board' shall mean the 'Town of Edenton Planning Board and Zoning Commission.'" Thus Edenton and perhaps many other North Carolina communities have designated the same body to serve as "zoning commission" and "planning commission."