CARLTON S. ASHBY, JR., CORA B. ASHBY, AND ASHBY FURNITURE GALLERIES, PLAINTIFFS-APPELLANTS v. THE TOWN OF CARY, DEFENDANT-APPELLEE

No. COA03-203

(Filed 2 December 2003)

**Zoning— denial of rezoning request—traffic congestion—plausible basis**

The trial court correctly entered summary judgment for defendant town in an action seeking a declaration that the denial of plaintiffs' rezoning application was contrary to law. Although plaintiffs contend that the town council's decision was arbitrary and capricious, the transcript reveals that the council denied the request because it was concerned that the traffic increase, though minimal, would exacerbate existing congestion and because it would be inappropriate to approve the request on the same day that it approved $10-20 million to investigate relief of traffic problems in the area.

Appeal by plaintiff from judgment entered 2 December 2002 by Judge Abraham Penn Jones, Superior Court, Wake County. Heard in the Court of Appeals 18 November 2003.

ASHBY v. TOWN OF CARY

[161 N.C. App. 499 (2003)]

*Morgan, Reeves & Gilchrist, by C. Winston Gilchrist, for plaintiff-Appellants.*

*The Brough Law Firm, by G. Nicholas Herman, for defendant-appellee.*

WYNN, Judge.

By this appeal, Carlton S. Ashby and his wife, Cora B. Ashby, d/b/a Ashby Furniture Galleries ("the Ashbys"), challenge the trial court's summary judgment upholding the Town of Cary's denial of their rezoning application. After careful review, we affirm.

The underlying facts show that in 2000, the Ashbys owned a lot of approximately one acre on Walnut Street outside of the Town of Cary's jurisdiction. The Ashbys wanted to build a new furniture store on this lot but needed additional land. Adjacent to the lot, the Town of Cary owned a lot consisting of less than one acre. The Town of Cary and the Ashbys negotiated a deal in which the Ashbys acquired the Town of Cary's lot and in exchange the Town of Cary obtained frontage from the Ashby lot necessary for the widening of Walnut Street.

In December 2000, pursuant to an annexation petition filed by the Ashbys, the Town of Cary annexed the Ashby property. The Ashbys contend that throughout the land exchange negotiations and the annexation process, the Town of Cary knew they intended to use their land for the construction of a furniture store. However, the Town of Cary contends the town council only knew the Ashbys were interested in developing the property in some unspecified way.

The two tracts of land total 1.99 acres located in an area commonly referred to as the "Walnut Street Corridor." The area consists of two major retail malls, a variety of commercial and retail developments, a movie theater, two auto dealerships, several office complexes and a 776-unit multi-family residential complex. Contiguous to the Ashby property is the Centrum Shopping Center, which consists of more than 750,000 square feet of retail and restaurant space.

Notwithstanding the abundance of commercial and retail establishments in this area, the Ashby tracts were zoned R-30 (Residential 30), for low-density residential purposes. Thus, in September 2001, the Ashbys filed an application with the Town of Cary to rezone the property from R-30 to B-2 (Business-2 Commercial) Conditional Use

district classification and also submitted an application for a conditional use permit. In their applications, the Ashbys proposed several conditions on the use of their property such as the property would be used only for a furniture store; the store would be no larger than 19,000 square feet; the traffic generated would not exceed 100 peak hour trips and 1000 average daily trips; and no certificate of occupancy for the store would be issued before the completion of the Town of Cary's project to widen and realign Walnut Street. The Ashbys included with their application a letter from an engineering firm, which stated that during a typical weekday the store would generate 51 additional car trips per day on Walnut Street. However, the letter did not address the amount of additional traffic the store would generate on weekends.

During the same time period in which the Ashbys submitted their applications, the Town of Cary began reconsidering the Southeast Gateway Area Plan, which was adopted in 1998 by the town council to address land use and transportation issues in the Walnut Street Corridor and the area surrounding the Crossroads Plaza Shopping Center. It was adopted as a reference guide to direct growth when rezoning, annexation, subdivision, and site plans are considered and had a goal of alleviating and mitigating existing and future traffic movement within the area. Under this plan, the proposed conditional use of the Ashbys property would meet the criteria of commercial low intensity land use, which was one of the three uses recommended for the area in which the Ashbys property is located. However, in April 2001, the town council approved funding for a new land use study to be called the "Walnut Street Land Use/Transportation Plan." Thus, at the time the Ashbys submitted their applications in September 2001, the Town of Cary was in the process of reviewing land uses in the Walnut Street corridor.

After following the requisite procedures for considering rezoning applications, the Ashbys' applications were placed on the town council's agenda for a final decision on 10 January 2002. On this same date, the town council had a work session to discuss the status and preliminary recommendations of the new "Revised Walnut Street Land Use/Transportation Plan." During the work session, the council members discussed traffic congestion on weekends and during peak hours and had extensive discussions about the differences between the Southeast Gateway Plan and the proposals set forth in the new plan. In particular, the town council discussed whether the Walnut Street area should be permitted to accommodate additional retail and com-

mercial uses or should be zoned for more office and institutional uses that would reduce traffic congestion.

That evening, the town council voted, 5-2, to deny the Ashbys application. The town council expressed a concern that even with the widening and realignment of Walnut Street, the weekend traffic congestion in the area could not accommodate additional retail or commercial uses. Thereafter, the town council voted to waive the restriction that prohibits a landowner from submitting a new application within 12 months after a denial. Thus, the Ashbys were permitted to submit a new application at any time.

Notwithstanding the town council's concerns about traffic congestion, on the same evening the town council considered and approved a rezoning application by Crossroads Ford, an automobile dealership, which rezoned 14.11 acres from Office and Institutional to B-2 Conditional Use for a parking lot storage facility for inventory.

After denial of their rezoning request, the Ashbys filed a declaratory judgment action seeking a declaration that the Town of Cary's denial of their rezoning application was null and void and contrary to law. After summary judgment was entered in favor of the Town of Cary, the Ashbys appealed.

On appeal, the Ashbys contend the trial court erroneously entered summary judgment in the Town of Cary's favor because genuine issues of material fact exist as to whether the council's decision was arbitrary and capricious. We disagree.

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Martin Architectural Products v. Meridian Construction*, 155 N.C. App. 176, 180, 574 S.E.2d 189, 191 (2002). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "An issue is genuine if it can be proven by substantial evidence." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "The movant has the burden of showing that summary judgment is appropriate. Furthermore, in considering summary judgment motions, we review the record in the light most favorable to the non-

movant." *Hayes v. Turner*, 98 N.C. App. 451, 456, 391 S.E.2d 513, 516 (1990).

The Ashbys contend the town council's decision was arbitrary and capricious because (1) the Town of Cary entered into the land-exchange transaction with knowledge that the Ashbys wished to acquire the property for the sole purpose of a furniture store, (2) the furniture store would generate low traffic, (3) the rezoning request complied with the Southeast Gateway Plan, the zoning plan in effect at the time of the request, (4) the Planning Board recommended the proposed rezoning by a unanimous vote, and (5) the town council approved Crossroads Ford's rezoning request. It is well established that the grant or denial of a rezoning request is purely a legislative decision which will be deemed arbitrary and capricious if "the record demonstrates that it had no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Graham v. Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981). A reviewing court is "not free to substitute [its] opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body." *Id.*

As an initial matter, we note that the Ashbys sought the introduction of evidence in the trial court that was not presented to the town council. Specifically, the Ashbys offered affidavits from a zoning expert and a traffic engineer. However, as indicated in *Graham v. Raleigh*, this Court considers the record before the legislative body in assessing the validity of a zoning action. *See id.* (stating "a zoning ordinance will be declared invalid only where *the record* demonstrates that it has no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense"). As stated, in reviewing rezoning decisions, this Court is not free to substitute our opinion for that of the legislative body so long as there is some plausible basis for the conclusions reached by that body. *See id.*

During the 10 January 2002 meeting, the town council members expressed some concern about the traffic increase that would be generated by the furniture store. Even though the traffic increase would be minimal, a majority of the council members felt that even a minimal increase in traffic would exacerbate the traffic congestion in the Walnut Street corridor. Moreover, council members felt it was inappropriate to approve the rezoning request on the same day that the council approved a $10-20 million dollar expenditure to investigate

how to alleviate the traffic problems in that area. As one council member stated: "I cannot, in good conscious, tell a resident when they ask me, 'What are you doing to fix the area?' "Well, we're going to spend $10 to 20 million, but we're going to add a little more retail too.' " Thus, the transcript reveals the town council denied the rezoning request because of the minimal increase in traffic in a heavily traffic congested area. Accordingly, the record reveals a plausible basis for the town council's decision that had a basis in reason and bore a substantial relation to public safety.

As stated, this Court is not free to substitute its judgment for that of the town council. Furthermore, "the courts may not "interfere with or control a municipality's zoning power or direct zoning ordinances to be repealed, enacted, or amended." *In re Markham*, 259 N.C. 566, 570, 131 S.E.2d 329, 333 (1963). Accordingly, the judgment below is,

Affirmed.

Judges TIMMONS-GOODSON and McCULLOUGH concur.