CITY OF WILMINGTON, Plaintiff v. BROADUS E. HILL, III, Defendant

No. COA07-11

(Filed 4 March 2008)

**1. Zoning— constitutional defense—failure to exhaust administrative remedies—agency requirement not authorized**

The district court had jurisdiction to consider defendant's constitutional defense to a zoning ordinance in an action to collect civil penalties under the ordinance despite defendant's failure to exhaust administrative remedies. It has been held that it is not necessary to apply to an administrative agency for a permit which the agency is not authorized to issue before asserting the inapplicability of the ordinance.

**2. Zoning— garage apartment ownership—use**

The trial court did not err by declaring unconstitutional part of a zoning ordinance that required defendant to live on the site of a garage apartment. The city is only entitled to regulate the use of defendant's single-family residence with the accessory use of a garage apartment, not the ownership.

**3. Zoning— garage apartments—scope of enabling statute**

The trial court did not err by declaring that a zoning ordinance requiring on-site residence for garage apartments was beyond the scope of the enabling statute, N.C.G.S. § 160A-381(a).

Appeal by plaintiff from judgment entered 20 September 2006 by Judge Rebecca W. Blackmore in New Hanover County District Court. Heard in the Court of Appeals 9 October 2007.

*Thomas C. Pollard, City Attorney and R. Lynn Coleman, Assistant City Attorney, for plaintiff-appellant.*

*Shanklin & Nichols, LLP, by Kenneth A. Shanklin and Sarah M. Mancinelli, for defendant-appellee.*

JACKSON, Judge.

The City of Wilmington ("plaintiff") appeals the trial court's order and judgment granting the motion to dismiss filed by Broadus E. Hill, III ("defendant"), and declaring unconstitutional the first sentence of Wilmington Land Development Code ("WLDC"), section 18-285(g). For the reasons stated below, we affirm.

On 21 July 2004, defendant applied for a building permit to build a garage apartment on property he owned at 303 McMillan Avenue. He was notified 20 July 2005 that his property was in violation of WLDC section 18. Plaintiff gave defendant until 20 August 2005 to bring the property into compliance. Section 18-285(g) requires the owner of a garage apartment to reside either in the main residence or the garage apartment. Defendant sought a text amendment to the ordinance on or about 21 July 2005 to eliminate the owner-residency requirement.

Defendant was cited $300.00 on 23 August 2005 for two days' violation of WLDC section 18-285(g). On 24 August 2005, defendant met with plaintiff to discuss an abatement of fines. He was notified on 25 August 2005 that violations must be corrected before a request for abatement could be considered; further, a pending text amendment does not stay the issuance of civil citations. Defendant then attempted to appeal plaintiff's determination.

The Planning Commission voted five to zero against the proposed text amendment on 7 September 2005. Defendant appealed on 9 September 2005, then withdrew his appeal on 20 September 2005.

On 21 September 2005, defendant met with plaintiff on issues related to several of his properties. He notified plaintiff that he was residing at 303 McMillan Avenue as of 20 September 2005. On 27 September 2005, plaintiff notified defendant that based upon his admission that he was in violation of WLDC from 24 August to 19 September 2005, he was being cited for twenty-seven days' violation, amounting to $5,400.00.

Defendant failed to pay any of the assessed civil penalties and was sent a final notice on 30 December 2005. Plaintiff voluntarily reduced the amount owed to $5,000.00 and filed the instant action in small claims court on 17 January 2006. Defendant moved the court on 16 March 2006 to dismiss the complaint, alleging the ordinance was unconstitutional. The magistrate entered judgment in plaintiff's favor that same date. On 24 March 2006, defendant appealed to the district court, and the case was set for mandatory arbitration. An arbitration award and judgment was entered in plaintiff's favor on 9 May 2006. Defendant requested a trial de novo on 15 May 2006.

The matter was heard in the district court on 19 June 2006. The court granted defendant's motion to dismiss, declared part of the ordinance unconstitutional, and declared defendant's citations null and void. The order was entered 20 September 2006. Plaintiff appeals.

**CITY OF WILMINGTON v. HILL**

[189 N.C. App. 173 (2008)]

**[1]** Plaintiff first argues that the district court lacked jurisdiction to consider defendant's defenses in that defendant failed to exhaust administrative remedies. We disagree.

Our Supreme Court has held that it is not necessary to apply to an administrative agency for a permit which that agency is not authorized to issue before asserting the inapplicability of the ordinance to the contemplated building project. *Town of Hillsborough v. Smith*, 276 N.C. 48, 58, 170 S.E.2d 904, 911 (1969). In *Hillsborough*, the Court cited *County of Lake v. MacNeal*, 181 N.E.2d 85 (Ill. 1962), as an example of a similar conclusion based upon a constitutional challenge.

> Although there is authority that the rule of exhaustion of administrative remedies has application whether the validity of a zoning ordinance is raised by a defendant or a moving party, there is at the same time the sound principle, based upon the assumption that one may not be held civilly or criminally liable for violating an invalid ordinance, that a proceeding for the violation of a municipal regulation is subject to any defense which will exonerate the defendant from liability, including a defense of the invalidity of the ordinance. Indeed, as one author has observed, "the tradition is deeply imbedded that . . . statutes may be challenged by resisting enforcement."

*Id.* at 89-90 (internal citations omitted) (alteration in original) (quoting 3 Kenneth Culp Davis, Administrative Law Treatise § 23.07 (1st ed. 1958)).

In addition, it is well settled that "[w]here an aggrieved party challenges the constitutionality of a regulation or statute, administrative remedies are deemed to be inadequate and exhaustion thereof is not required." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 224, 517 S.E.2d 406, 412 (1999) (citing *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 509 S.E.2d 165 (1998)). Accordingly, plaintiff's assignment of error is overruled.

**[2]** Plaintiff next argues the trial court erred in declaring part of the ordinance unconstitutional and granting defendant's motion to dismiss. We disagree.

When a trial court sits without a jury, the standard of review upon appeal is "whether there was competent evidence to support [the court's] findings of fact and whether its conclusions of law were proper in light of [the] facts." *In re Norris*, 65 N.C. App. 269, 275, 310

S.E.2d 25, 29 (1983) (citations omitted), *cert. denied,* 310 N.C. 744, 315 S.E.2d 703 (1984). The trial court's conclusions of law are reviewed *de novo. Davison v. Duke University,* 282 N.C. 676, 712, 194 S.E.2d 761, 783 (1973).

The trial court based its decision primarily on this Court's holding in *Graham Court Assoc. v. Town of Chapel Hill,* 53 N.C. App. 543, 281 S.E.2d 418 (1981). In *Graham Court Associates,* the central question presented was "whether the power to control the *uses* of property through zoning extends to control of the manner in which the property is owned." *Id.* at 544, 281 S.E.2d at 419 (emphasis in original). There, the owner of a prior non-conforming apartment complex sought to sell the individual apartments and convert the property to condominiums. The Town of Chapel Hill denied a special use permit, and the landowner appealed, arguing that the special use permit requirement was an unconstitutional regulation of ownership. The property in question fell within a zoning district in which multi-family residential property was a permissible use. The change in ownership from a single owner to multiple owners did not alter the property's character as to multi-family residential use. This Court held that the landowner was not required to apply for or receive a special use permit in order to convert the formerly tenant-occupied apartments to owner-occupied condominiums. "If a use is permitted, as here, it is beyond the power of the municipality to regulate the manner of ownership of the legal estate." *Id.* at 551, 281 S.E.2d at 422-23 (citations omitted).

In *Graham Court Associates,* this Court also quoted with approval the New Jersey case of *Beers v. Bd. of Adjust. of Wayne Tp.,* 183 A.2d 130 (N.J. Super. 1962). The *Beers* court stated that the municipal

[d]efendants do not even suggest, nor do we believe they properly could, that owner-occupation of a dwelling is a different use of the property in a zoning sense from tenant-occupation, the actual occupancy of the residence in either case being by a single family.

*Id.* at 136. In *Beers,* the subject property held five small tenant-occupied houses, built prior to the enactment of the zoning ordinance at issue. The houses were sold to their tenants and the resulting use of each individual house remained the same—only the ownership changed. Similarly, in the case *sub judice,* defendant does not seek to change the use of one of the structures on his lot, merely the nature of the occupancy.

In the instant case, the property in question is located in a district that is zoned for single-family residences; however, garage apartments are permitted as an accessory use, incidental and subordinate to the principal use as a single-family residence. *See* WLDC § 18-179 (2005). Garage apartments also are allowed in certain multi-family districts in connection with conforming single-family residences within the district. *See* WLDC § 18-285 (2005). Plaintiff only is entitled to regulate the *use* of defendant's single-family residence with the accessory use of a garage apartment, not the *ownership*. *See Graham Court Assoc.*, 53 N.C. App. at 546, 281 S.E.2d at 420 (quoting *O'Connor v. City of Moscow*, 202 P.2d 401, 404 (Idaho 1949) (" 'A zoning ordinance deals basically with the use, not ownership, of property.' ")).

In support of its proposition that its owner occupancy requirement is constitutional, plaintiff cites two cases: *Anderson v. Provo City Corp.*, 108 P.3d 701, 706 (Utah 2005) ("We reject the proposition that placing an owner occupancy condition on a supplementary accessory dwelling use constitutes an impermissible regulation of 'ownership.' ") and *Kasper v. Town of Brookhaven*, 142 A.D.2d 213, 220-21 (N.Y. 1988) ("Inasmuch as the owner-occupancy requirement is an integral component of the town's legislative strategy to achieve" the goal of aiding occupying homeowners in retaining and maintaining their properties while answering the need for affordable housing, the court declined to determine whether the ordinance was the "wisest or most expeditious means" of accomplishing this goal.). As these cases do not constitute binding authority and their reasoning is at odds with *Graham Court Associates*, we disagree with plaintiff's reliance upon them.

In North Carolina, "[a] zoning ordinance will be declared invalid only where the record demonstrates that it has no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Graham v. City of Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981) (citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 71 L. Ed. 303, 314 (1926)), *disc. rev. denied*, 305 N.C. 299, 290 S.E.2d 702 (1982).

When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body

charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare.

*In re Appeal of Parker*, 214 N.C. 51, 55, 197 S.E. 706, 709 (citations omitted), *appeal dismissed, Parker v. Greensboro*, 305 U.S. 568, 83 L. Ed. 358 (1938). Here, the owner occupancy requirement of WLDC § 18-285(g) is at odds with our precedents, as it is "beyond the power of the municipality to regulate the manner of ownership of the legal estate." *Graham Court Associates*, 53 N.C. App. at 551, 281 S.E.2d at 422-23 (citations omitted). Therefore, this assignment of error is overruled.

[3] Plaintiff's final argument is that the trial court erred in declaring WLDC section 18-285(g) beyond the scope of the zoning enabling statute. We disagree.

North Carolina General Statutes, section 160A-381(a) grants the city the power to "regulate and restrict the . . . use of buildings, structures and land." N.C. Gen. Stat. § 160A-381(a) (2006).

> Zoning regulations shall be designed to promote the public health, safety, and general welfare. To that end, the regulations may address, among other things, the following public purposes: . . . to prevent the overcrowding of land; to avoid undue concentration of population; to lessen congestion in the streets; [and] to secure safety from fire, panic, and dangers; . . . . The regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city.

N.C. Gen. Stat. § 160A-383 (2006). As discussed above, WLDC section 18-285(g) impermissibly regulates the ownership rather than the use of defendant's property.

For the foregoing reasons, the dismissal of plaintiff's claim was without error.

Affirmed.

Judges WYNN and HUNTER concur.