TONTER INVESTMENTS, INC., Plaintiff v. PASQUOTANK COUNTY, Defendant

No. COA08-1057

(Filed 1 September 2009)

**Zoning— tracts greater than ten acres—exempt from subdivision ordinances—subject to zoning power**

Defendant county's amendments to ordinances were valid exercises of the zoning power granted to the county by the General Assembly and were not *ultra vires*. Plaintiff argued that the amendments violated a statute that does not allow counties to adopt subdivision ordinances where the lots are greater than ten acres in size, but the fact that those lots are exempted from subdivision regulations does not mean that they are not subject to a county's zoning power.

Appeal by plaintiff from order entered 16 June 2008 by Judge W. Russell Duke, Jr., in Pasquotank County Superior Court. Heard in the Court of Appeals 11 February 2009.

*The Brough Law Firm, by Michael B. Brough, for plaintiff.*

*Poyner Spruill LLP, by Robin Tatum Currin and R. Michael Cox, for defendant.*

*James B. Blackburn, III, for amicus curiae North Carolina Association of County Commissioners.*

ELMORE, Judge.

This case concerns three separate tracts of land in Pasquotank County (defendant) that were purchased by Tonter Investments, Inc. (plaintiff), in March and July 2007. Soon thereafter, defendant passed several ordinances that resulted in plaintiff not being able to build residences on any of the lots. Defendant argues that this particular application of defendant's zoning power is an attempt to circumvent certain exemptions given by the State Legislature to tracts of land that exceed ten acres, and, as such, defendant's ordinances are *ultra vires* and not valid. The trial court issued summary judgment in favor of defendant, finding that the ordinances were within defendant's zoning power. We affirm the trial court's decision.

**TONTER INVS., INC. v. PASQUOTANK CNTY.**

[199 N.C. App. 579 (2009)]

## FACTS

In March 2007, plaintiff purchased a 136-acre tract of land (Tract 1) that has approximately 1,665 feet of frontage along a state-maintained highway known as Sandy Road. Later that same month, plaintiff purchased a 75.7 acre tract of land (Tract 2) that has approximately 2,751 feet of frontage on Sandy Road. Plaintiff also owns a 26-acre tract of land (Tract 3) with approximately 800 feet of frontage on Sandy Road. All three tracts are located in Pasquotank County.

Tracts 1 and 2 are zoned by defendant as A-2, Agricultural District, which permitted residential structures at the time that plaintiff purchased the tracts. However, on 6 August 2007, defendant passed an ordinance (the August Amendment) prohibiting all residential uses for A-2 districts, thus preventing plaintiff from turning Tracts 1 and 2 into subdivided residential developments as planned. Meanwhile, Tract 3 is zoned as A-1, Agricultural, a designation which has permitted residential structures since the time of plaintiff's purchase. However, defendant passed another ordinance on 4 September 2007 (the September Amendment) requiring that, unless an exception is granted by defendant,

> [n]o building or structure shall be established on a lot recorded in the Pasquotank County Registry after September 4, 2007[,] which does not meet the following requirements:
>
> > (A) Lots shall contain a minimum of 25 feet of frontage on a state maintained road or a road that has been approved in accordance with the Pasquotank County Subdivision Ordinance; and
> >
> > (B) Lots shall be located within 1,000 feet of a public water supply.

All three tracts have proper amounts of road frontage, but none of the three tracts is located within 1,000 feet of a public water supply, meaning that plaintiff cannot build any structures on the tracts without an exception granted by defendant. On 28 September 2007, plaintiff filed a complaint alleging that the August and September Amendments were beyond defendant's zoning power. On 10 March 2008, defendant rejected plaintiff's request for an exception to the August and September Amendments. The case was then heard before the Honorable W. Russell Duke, Jr., on 9 June 2008 at the Pasquotank County Superior Court. On 19 June 2008, Judge Duke granted defendant's motion for summary judgment, effectively ruling that the August

and September Amendments were within defendant's zoning power. Plaintiff appeals to this Court.

## ARGUMENT

Plaintiff argues that the August and September Amendments are *ultra vires* and thus void as applied to lots in excess of ten acres. We disagree.

At trial, Judge Duke granted summary judgment in favor of defendant.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. . . . The standard of review for summary judgment is de novo.

*Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (quotations and citations omitted). However, both parties concede that there is no real dispute as to the facts. The case is entirely one of statutory interpretation.

It is well established that "[c]ounties are creatures of the General Assembly and have no inherent legislative powers. They are instrumentalities of state government and possess only those powers the General Assembly has conferred upon them." *Craig v. County of Chatham*, 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002). The General Assembly has authorized counties to adopt ordinances regulating land subdivisions, which is defined to include "all divisions of a tract or parcel into two or more lots, building sites, or other divisions when any one or more of those divisions are created for the purpose of sale or building development[.]" N.C. Gen. Stat. § 153A-335(a) (2007). However, counties are not authorized to regulate all types of subdivisions. N.C. Gen. Stat. § 153A-335(a) specifically exempts "division of land into parcels greater than 10 acres" from "regulations enacted pursuant to [section 153A-335]." N.C. Gen. Stat. § 153A-335(a)(2) (2007). That is, counties cannot adopt subdivision ordinances where the lots are greater than ten acres in size. Both parties to the present litigation agree that plaintiff had already subdivided some of the tracts—and had plans to subdivide the remaining tracts—into lots that were all at least ten acres in size. As such, defendant clearly has

no ability to impose subdivision regulations on plaintiff's lots greater than ten acres.

However, the August and September Amendments were both passed by defendant as zoning ordinances, not subdivision ordinances. With respect to counties' authority to create zoning regulations, the General Assembly has provided:

> For the purpose of promoting health, safety, morals, or the general welfare, a county may adopt zoning and development regulation ordinances. These ordinances may be adopted as part of a unified development ordinance or as a separate ordinance. A zoning ordinance may regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes.

N.C. Gen. Stat. § 153A-340(a) (2007). Plaintiff argues that defendant passed the August and September Amendments under the guise of zoning ordinances because defendant knew that it could not use subdivision ordinances to regulate plaintiff's large lots. As such, plaintiff argues, the August and September Amendments are *ultra vires* and designed to circumvent the General Assembly's intent to exempt lots greater than ten acres from regulation by counties. As such, plaintiff's argument is that lots greater than ten acres in size are exempt from all county zoning regulations, not just subdivision regulations.

To support its position, plaintiff relies on *Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 480 S.E.2d 681 (1997). In *Three Guys*, a developer submitted a proposed division of 231.37 acres into twenty-three parcels, each in excess of ten acres, but Harnett County refused to certify the plat because doing so would have meant that Harnett County had no subdivision regulation over the lots. *Id.* at 470-71, 480 S.E.2d at 682-83. Our Supreme Court found that Harnett County was not permitted to

> invalidate the specific exemption clearly stated in N.C.G.S. § 153A-335(2). The language of N.C.G.S. § 153A-335(2) itself is not ambiguous, and plaintiff's division of land falls, without question, under this exception. No other construction can reasonably be accomplished without doing violence to the legislative language.

*Id.* at 473-74, 480 S.E.2d at 684.

## SEPTEMBER AMENDMENT

In the present case, plaintiff argues that the September Amendment, which prohibits any structure from being built in Pasquotank County unless the lot has at least twenty-five feet of road frontage and is within 1,000 feet of a public water source, is analogous to Harnett County's refusal to certify in *Three·Guys*, in that it restricts the creation of lots greater than ten acres. However, there is no evidence that the General Assembly intended for ten acre lots to enjoy unfettered exemption from all county regulations, including zoning ordinances. Additionally, the September Amendment deals precisely with the zoning authority granted to counties by section 153A-340(a), in that the September Amendment "regulate[s] and restrict[s] . . . the size of yards, courts and other open spaces . . . and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes." N.C. Gen. Stat. § 153A-340(a) (2007). *Three Guys* dealt with a county that was stubbornly preventing a developer from dividing his property into lots greater than ten acres; in the present case, the September Amendment does not prohibit such division, and defendant admits that plaintiff is still free to subdivide its property into lots greater than ten acres. As such, the September Amendment is not analogous to Harnett County's stonewalling in *Three Guys*, and the September Amendment does not contradict the General Assembly's intent to prevent lots larger than ten acres from facing subdivision regulation.

Therefore, the September Amendment is properly considered to be a zoning ordinance.

A zoning ordinance will be declared invalid only where the record demonstrates that it has no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety[,] or the public welfare in its proper sense. It is not required that an amendment to the zoning ordinance in question accomplish or contribute specifically to the accomplishment of all of the purposes specified in the enabling act. It is sufficient that the legislative body of the city had reasonable grounds upon which to conclude that one or more of those purposes would be accomplished or aided by the amending ordinance. The legislative body is charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. When the action of the legislative body is reviewed by the courts, the latter are not free to substitute their opinion for that of the legislative body so long

as there is some plausible basis for the conclusion reached by that body.

*Graham v. Raleigh,* 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981) (citations omitted). The September Amendment was passed with the goal of ensuring that all new structures in Pasquotank County will have adequate access to drinking water, as well as roads that can handle traffic and emergency vehicles, goals that clearly fit within the interests described by *Graham* above. Also, unlike the situation in *Three Guys,* where the developer had no course but to seek litigation to remedy the County's stonewalling, plaintiff in the present litigation can satisfy the September Amendment by constructing roads and water pipes to the tracts. In other words, the September Amendment does not prohibit plaintiff from building on the ten acre lots, but rather requires plaintiff to provide adequate roads and water service to the lots before structures may be built.

As such, the September Amendment was within defendant's statutorily granted zoning power, and defendant had reasonable grounds to believe that it would aid the public health, welfare, and safety. Therefore, the September was a valid exercise of defendant's zoning power, and plaintiff's arguments to the contrary are overruled.

## AUGUST AMENDMENT

Plaintiff then argues that the August Amendment, which prohibits any residential structures from being built on lots zoned "A-2, Agricultural," is also *ultra vires* because it is inconsistent with the General Assembly's exemption of ten-acre lots from regulatory control. In particular, plaintiff argues that the General Assembly never intended to allow a county to completely prevent single-family homes from being constructed on lots greater than ten acres.

At the hearing for the August Amendment, Planning Director Shelley Cox stated:

the purpose [of the August Amendment] is to prevent future residential development in this area. She said there has been some interest in dividing ten-acre parcels in the Sandy Road area and plats have been brought to her office that contain 31 ten-acre lots that have been cut up in this area. Ms. Cox stated that the county is very concerned about this[.]

Plaintiff interprets this language to mean that defendant's sole purpose in enacting the August Amendment was to prevent plaintiff

from developing ten-acre lots near Sandy Road. However, the August Amendment applies to all lots zoned A-2, not just ten-acre lots. Additionally, the General Assembly has provided that a county may divide its jurisdiction into "districts of any number, shape, and area that it may consider best suited to carry out the purposes of [zoning]," and within each district, the county is authorized to regulate and restrict the "use of buildings, structures, or land." N.C. Gen. Stat. § 153A-342 (2007). Plaintiff has not cited any authority tending to show that counties must allow residences in all zoning districts. *See* Owens, David W., Land Use Law in North Carolina (UNC School of Government 2006) 34 (stating that counties frequently do not allow residences in certain districts).

Additionally, as stated above, a zoning regulation will be struck down only if it has no foundation in reason and bears no substantial relation to the public health, morals, safety, or welfare. *Graham*, 55 N.C. App. at 110, 284 S.E.2d at 744. According to Rodney Bunch, the Assistant County Manager, the August Amendment was passed based on: (1) the remote nature and lack of improved roads within most of the A-2 district, (2) the potential strain on the County's ability to provide essential public services to residents in this district, (3) the fact that only five residences currently exist in the entire A-2 district, and (4) the aerial application of pesticides within a large part of the district. As such, there was a clear relationship between preventing residences from being built in the A-2 zone and public health and safety; the County would be unable to provide essential public services to the new residences, and the residences would also be subject to safety concerns from aerial pesticide spraying. Plaintiff is not deprived of all uses of the land, since the August Amendment prohibits only residences in zone A-2, leaving intact the other uses of the land approved by defendant.

The Amendment had a rational basis founded on a relationship to protect the public safety in zone A-2; as such, it was within defendant's zoning power, and plaintiff's argument is overruled.

CONCLUSION

The August and September Amendments both had rational bases for their creation, namely that their requirements had a strong relationship to public safety and health. Additionally, the fact that lots greater than ten acres are exempted from subdivision regulations imposed by a county does not mean that the lots are not still subject to a county's zoning power. To hold otherwise would fly in the

**PRESSLER v. DUKE UNIV.**

[199 N.C. App. 586 (2009)]

face of zoning authority specifically granted to counties by the General Assembly for the purpose of promoting public health by regulating the location and use of structures and land. As such, we hold that defendant's August and September Amendments were both valid exercises of defendant's zoning power granted to it by the General Assembly and were not *ultra vires*. Plaintiff's arguments are overruled.

Affirmed.

Judges CALABRIA and GEER concur.